UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CLARENCE J. HARRIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 4:24-cv-00313-SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on petitioner Clarence J. Harris's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1]. For the reasons stated below, the Court will deny the motion without an evidentiary hearing because the record conclusively establishes that petitioner is not entitled to relief.

## I. BACKGROUND[1]

Harris was indicted by the Grand Jury for the Eastern District of Missouri on August 29, 2019 for possession of a firearm by a felon in violation of 18 U.S.C.§ 922(g)(1). [Doc. 1].

### *Written Guilty Plea Agreement*

Harris pled guilty pursuant to a written guilty plea agreement with the government. [Docs. 65, 66, 101]. Under the plea agreement, Harris stipulated and

[1]All citations to the record refer to the underlying criminal case, *United States v. Harris*, 4:19-cr-00711-SNLJ (E.D.Mo.), unless otherwise noted.

agreed to the following facts:[2] On July 24, 2019, St. Louis Metropolitan Police Department ("SLMPD") officers were patrolling the Baden neighborhood in the City of St. Louis, within the Eastern District of Missouri. Near the intersection of Baden Avenue and Church Street, officers observed a white Nissan Sentra. The officer noted the Sentra had heavy window tinting and failed to stop at a stop sign. As a result, the officers activated their lights and sirens to pull the Sentra over. The Defendant, who was later identified as the driver of the Sentra, pulled to the curb, but when the officers got out of their patrol vehicle to approach, the Defendant pulled away from the curb and drove off at a high rate of speed. The officers observed the Defendant swerve in and out of oncoming traffic, drive through red lights, and continue to drive at a high rate of speed. At the intersection of Halls Ferry Road and North Broadway Boulevard, the Defendant attempted to make a right turn, but lost control of the Sentra and ran into an island curb, disabling the Sentra. The Defendant exited the driver's seat of the Sentra and ran away from the officers. The Defendant ignored repeated calls to stop, resulting in one of the officers deploying his Taser. The Taser struck the Defendant, he stopped running, and the officers placed the Defendant under arrest.

The officers returned to the Sentra to conduct an inventory search, prior to towing it. A search of the Sentra revealed, on the front passenger seat floorboard, a .45 caliber Taurus pistol, loaded with 11 rounds of ammunition, and a .38 caliber Taurus revolver, loaded with 5 rounds of ammunition.

[2] The facts are taken verbatim from the Guilty-Plea Agreement [Doc. 66 at pp. 3-4].

Both the .45 caliber Taurus pistol and the .38 caliber Taurus revolver were determined by an expert firearms examiner to have been manufactured outside the State of Missouri, and, therefore, had been transported across state lines and in interstate commerce prior to or during the Defendant's possession. Both the .45 caliber Taurus pistol and the .38 caliber Taurus revolver can expel a projectile by the action of an explosive and are, therefore, "firearms" as defined under federal law.

Prior to July 24, 2019, the Defendant was convicted of at least one felony crime punishable by imprisonment for a term exceeding one year. At the time the Defendant possessed the aforementioned firearms, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

By executing the written plea agreement, Harris acknowledged that he "voluntarily entered into both the plea agreement and the guilty plea" and that the guilty plea is made of his "own free will and that [he] is, in fact, guilty." [Doc. 66 at p. 11].

The possible penalties were set forth in the plea agreement as follows:

> The Defendant fully understands that the maximum possible penalty provided by law for the crime to which the Defendant is pleading guilty is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.
> In certain situations under Title 18, United States Code, Section 924(e)(Armed Career Criminal), the Defendant may be subject to a mandatory minimum sentence of imprisonment of fifteen (15) years and a maximum of life, a fine of not more than $250,000, or both such imprisonment and fine, and a term of supervised release of not more than five years. The Defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with counsel and will not be able to withdraw the guilty plea if the Court determines the foregoing statute applies to the Defendant's sentence.

[*Id.* at p. 4].

Further, the parties agreed that the United States would request a sentence within the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. [*Id.* at p. 2]. The parties further agreed that the Defendant could request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. [*Id.*]. The parties acknowledged their understanding "that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document." [*Id.*].

With regard to the U.S. Sentencing Guidelines total offense level, the parties agreed that :

> [The total offense level] will depend on the Base Offense Level determined pursuant to Section 2K2.1(a), along with other relevant factors stated above, unless the Defendant is an Armed Career Criminal. Depending on the underlying offense and the Defendant's criminal history, the Defendant could be an Armed Career Criminal pursuant to Title 18, United States Code, Section 924(e) and Section 4B1.4. However, the parties have done independent investigation and the Defendant and the United States do not believe that the Defendant is an Armed Career Criminal. If the Court finds the Defendant is an Armed Career Criminal, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. The Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the Defendant is not an Armed Career Criminal.

[*Id.* at pp. 6-7]. Additionally, the parties agreed that "[t]he determination of the Defendant's Criminal History Category shall be left to the Court" and that "the Court

is not bound by the Guidelines analysis agreed to herein." [*Id.* at p. 7]. The parties acknowledged that they "may not have foreseen all applicable Guidelines" and that the Court "may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement." [*Id.*]. The Defendant acknowledged "that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement that deal with charges the United States agrees to dismiss or not to bring." [*Id.* at p. 12]. Finally, the plea agreement contained the following language:

> The Defendant is fully satisfied with the representation from defense counsel. The Defendant has reviewed the United States'[s] evidence and discussed the United States'[s] case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the United States'[s] case and any defenses.

[*Id.* at p. 11].

***Change of Plea Hearing***

On March 18, 2021, Harris appeared with his attorney for a change of plea hearing pursuant to the written guilty plea agreement. [Doc. 101]. He was placed under oath and advised that his answers were subject to the penalties of perjury if he did not answer truthfully. [*Id.* at p. 3]. During the plea colloquy, the Court asked Harris if he had read and understood the plea agreement:

> Court: Now, the lawyers have given me this written guilty plea agreement consisting of 13 pages, and I see that you and the lawyers have signed the agreement at the bottom of 12 and the top of 13; is that right?
>
> Harris: Correct, Your Honor.

Court: Have you read the agreement?
Harris: Yes. I went over the agreement, Your Honor.

Court: Have you gone over it in detail with your lawyer?
Harris: Yes, Your Honor.

Court: Has he explained the contents of the agreement in detail to you?
Harris: Yes, Your Honor.

Court: And do you understand the contents of the agreement?
Harris: Yes, Your Honor.

Court: Is there anything in here that you do not understand?
Harris: No, sir, Your Honor. I understand.

Court: Okay. Now, have any promises been made by anyone to get you to plead guilty other than the promises set out in the agreement?
Harris: No, sir, Your Honor.

Court: So this is the complete, full and total agreement, right?
Harris: Correct, Your Honor.

Court: And you understand if I accept the agreement, you will not be allowed to withdraw your plea of guilty, okay?
Harris: Yes, sir.

[*Id.* at pp. 7-8].

The Court also covered the possible range of penalties with Harris prior to accepting his guilty plea.

Court: Has your lawyer also explained to you the Sentencing Guidelines?
Harris: Yeah. He informed me that I have to get the PSI back to get my Sentencing Guidelines

Court: … Well, I'm going to explain that further. That's all set out on pages 5, 6, and 7. And so you'll understand, after your plea I'll get with the probation office, and we'll calculate the Sentencing Guidelines by using two factors. The first is your criminal history, that's your criminal record. And the second factor is what we call the Total Offense Level for this offense. Those are the two factors

that go into the calculation. And then if you disagree with the calculation, you can challenge that determination. Do you understand?

Harris: Yes, sir.

Court: I see on page 6 that the lawyers do not have an estimate for the Total Offense Level, but there's this notation here that if it is determined that you are an armed career criminal, and we're not going to know that until after we determine exactly what your criminal record is after completing the presentence report, but if your criminal record is such that you fall into that category of being an armed career criminal, then you're going to have a higher Total Offense Level, and you'll be in the highest Criminal History Category of Category VI. Now, do you understand that too?

Harris: Yes, sir.

Court: And, once again, your lawyer has explained it; right?

Harris: Yes, sir.

Court: Now, I need to tell you, too, the Sentencing Guidelines, whatever they turn out to be, are simply guidelines, and by that I mean I can impose a sentence against you that's above the guidelines or a sentence that's below the guidelines. Do you understand that too?

Harris: Yes, Your Honor.

Court: What I'm bound by, though, is the statutory penalty. That's paragraph 5 at the bottom of page 4. The penalty for this offense is up to 10 years in prison, a fine of up [to] $250,000 or a combination of imprisonment and fine, and after your release, there would be a period of supervised release of up to three years. Do you understand that part?

Harris: Yes, Your Honor.

Court: Then the next paragraph, though, is what we were talking about before. If because of your criminal record you fall into that category of being an armed career criminal, then you will be subject to a mandatory minimum prison sentence of 15 years up to life and, again, a combination of fine and/or imprisonment and fine, and the supervised release would be up to 5 years instead of up to 3 years. Do you understand all that too?

Harris: Yes, Your Honor.

Court: And knowing that you still wish to plead guilty?

Harris: Yes, sir.

Court: Now, I'm going to consider the full range of punishment whether it's up to 10 years in prison or whether it's a minimum of 15 years up to life in prison. And then sentence to be imposed will be in my discretion within that range of punishment. Do you understand all that too?
Harris: Yes, Your Honor.

Court: So with that in mind has anyone told you or promised you what sentence you'll receive in the case?
Harris: No, sir, Your Honor.

[*Id.* at pp. 9-12].

During the plea hearing, the prosecutor recited the factual basis for the guilty plea. [*Id.* at pp. 12-14]. The Court then asked Harris whether he agreed with the factual basis:

Court: Mr. Harris, have you heard the statements from the prosecutor?
Harris: Yes, Your Honor.

Court: Is everything she said true and correct?
Harris: Correct, Your Honor.

Court: Do you admit that you did all those acts she described?
Harris: Correct, Your Honor.

Court: There's no question about it, is there?
Harris: No question, Your Honor.

Court: All right. I'm going to go through the elements of the offense with you specifically. That's Paragraph 3 at the bottom of page 2. Do you admit that you've been convicted of a crime punishable by imprisonment for a term exceeding a year -- that's a felony, in other words; that you knowingly possessed a firearm; and at the time you knew you were a convicted felon and that the firearm had been transported across the state line at some time beforehand? Do you admit all that?
Harris: Yes, sir.

Court: Are you pleading guilty then because you are guilty?
Harris: Yes, sir.

[*Id.* at pp. 14-15]. The Court then found that Harris was competent to enter a plea of guilty, that he did so freely, knowingly, and voluntarily, and that he admitted the essential elements of the crime charged. [*Id.* at p. 15]. The Court set a date for sentencing and directed Harris to speak with the probation office to begin the preparation of the presentence report. [*Id.* at p. 16].

The Court also made inquiry as to Harris's level of satisfaction with his attorney prior to accepting his guilty plea:

Court: Because this is a criminal case you're entitled to effective representation from a lawyer at each stage of the proceedings against you. Do you understand?
Harris: Yes, Your Honor.

Court: So with that in mind I'll ask you are you satisfied with the way your lawyer has handled your case?
Harris: Yes, Your Honor.

Court: Has he investigated the case to your satisfaction?
Harris: Yes, Your Honor.

Court: Has he done everything you've asked him to do?
Harris: Yes, sir.

Court: Do you have any gripes or complaints whatsoever?
Harris: No, Your Honor.

Court: I want to make sure too that because of the Covid and the inability to meet a lot in person that you've had good communication with your lawyer and that the communication with your lawyer has not been a problem at all; is that correct?
Harris: Correct, Your Honor.

[*Id.* at p. 5].

***Presentence Investigation Report***

In the Presentence Investigation Report (PSR), the base offense level was reported to be 20. [Doc. 72 at ¶ 21]. Two levels were added because the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. [*Id.* at ¶ 25]. Because Harris had at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different occasions, he was subject to the armed career criminal enhancement with an offense level of 33. [*Id.* at ¶ 27]. Three levels were deducted because the defendant clearly demonstrated acceptance of responsibility and timely notified authorities of the intention to enter a plea of guilty. [*Id.* at ¶¶ 28, 29]. The total offense level was calculated to be 30. [*Id.* at ¶ 30].

The PSR calculated a criminal history category of V based on Harris's criminal history score and because of the armed career criminal designation. [*Id.* at ¶¶ 33-42]. With a total offense level of 30 and a criminal history category of V, the guideline imprisonment range was 151 months to 188 months. [*Id.* at ¶ 70]. However, because of the armed career criminal designation, the guideline range was 180 months to 188 months. The PSR noted that Harris had a pending parole revocation in state court and was subject to an undischarged term of imprisonment and recommended that any sentence imposed run consecutively to the sentence imposed for the revocation. [*Id.* at ¶ 71].

***Sentencing Hearing***

On March 3, 2022, Harris appeared with his attorney for sentencing. [Docs. 103,

119]. The Court began by discussing a motion to allow Harris to withdraw his guilty plea. [Doc. 119 at p. 2]. The Court denied the motion and explained the reason for that ruling. [*Id.*]. The Court discussed the provisions of the written guilty plea and Harris's testimony during the plea hearing, which clearly refuted the grounds for the motion to withdraw. [*Id.* at pp. 2-7]. Next the Court ruled on Harris's objection to the presentence report. [*Id.* at pp. 7-8]. The Court then reviewed the presentence report from the probation office with Harris.

> Court: Mr. Harris, have you received a copy of the presentence report?
> Harris: Yes, sir.
>
> Court: And have you gone over it in detail with your lawyer?
> Harris: Yes, sir.

[*Id.* at pp. 8-9]. The Court then noted the guideline range of 180 to 188 and the statutory minimum of not less than fifteen years. [*Id.* at p. 9]. The Government made a sentence recommendation for 15 years. [*Id.* at p. 10]. Defense counsel requested the Court follow the least restrictive means to achieve the goals of 3533 when sentencing Harris. [*Id.*]. Harris then had an opportunity to make statement, which he declined. [*Id.* at p. 11]. Ultimately, the Court sentenced Harris to 180 months incarceration, which was the statutory minimum. [*Id.* at p. 13].

### ***Appeal***

Harris appealed, alleging that this Court erred (1) in denying him leave to withdraw his guilty plea and (2) in finding that his criminal history included three Armed Career Criminal Act predicate offenses. [Doc. 122]. For the first issue, he argued that the presentence report's conclusion that he qualified as an armed career

criminal was a "fair and just reason for requesting the withdrawal" because his guilty plea was induced by the Government's representation that it did not believe him to be ACCA-eligible. [*Id.* at p. 4]. The appellate court disagreed and noted:

> Harris's plea agreement expressly contemplated the possibility that the district court might determine him to qualify for an ACCA mandatory minimum sentence, and it made clear that this would not create grounds for withdrawal. The district court reviewed these provisions of the plea agreement with Harris during his plea hearing, emphasizing, "if it is determined that you are an armed career criminal . . . then you're going to have a higher Total Offense Level" and "we're not going to know that until after we determine exactly what your criminal record is after completing the presentence report." The district court also reiterated that if it turned out that Harris qualified as an armed career criminal, he would be subject to a 15-year minimum sentence. Harris unequivocally indicated that he understood this possibility, that he had discussed it with his lawyer, and that he wished to plead guilty anyway.

[*Id.*]. Under those circumstances, the appellate court held that Harris failed to show any "fair and just reason for requesting the withdrawal." [*Id.*]

For the second issue, Harris argued his second unlawful-discharge conviction under § 571.030.1(9) RSMo. is not a violent felony under the ACCA. [*Id.* at p. 5]. In reviewing the indictment and the language of the statute, the appellate court stated:

> [The language of the indictment] makes clear that Harris pleaded guilty to the § 571.030.1(9) offense of shooting at other persons from a motor vehicle. The final step, then, is to determine whether this offense has a physical-force element. We conclude that it does because there is no "non-fanciful, non-theoretical manner" to knowingly shoot at other persons from a motor vehicle "without so much as the threatened use of physical force."

[*Id.* at pp. 6-7]. On that basis, the appellate court held this Court did not err in concluding that Harris qualified for a mandatory minimum sentence of 15 years imprisonment under the ACCA. [*Id.* at p. 7]. The mandate was issued on March 14, 2024. [*Id.*].

### *§ 2255 motion*

Harris filed the instant § 2255 motion in a timely manner, asserting the following claim:

> Trial counsel provided ineffective assistance of counsel during the off-record guilty plea [] negotiation process by misleading petitioner and third party witness that the guilty plea entered entailed a sentence of 58-months, because he had investigated the petitioner's prior convictions and determined that petitioner would not be sentenced as an ACCA offender, leading to the entering of an unknowing, involuntary, and invalid plea and waiver.

In support of his claim, he alleges the following: Defense counsel told him the Government was offering a plea deal for 58 months and that defense counsel was 100% sure Harris's prior convictions did not qualify as ACCA predicates. He states he rejected the plea offer because he was not guilty and wanted to pursue a motion to suppress challenging the initial stop of the vehicle. Subsequently, defense counsel advised him that he had made a mistake and that any plea would result in an ACCA enhancement, with a starting guideline range of 180 months. Harris alleges he rejected the plea offer and told counsel he wanted to pursue a motion to suppress and go to trial. Harris states that after that conversation he hired new counsel.

According to Harris, his new counsel discussed the 58 month plea deal and assured him that he would not qualify as an ACCA offender. Harris states he again asserted his innocence and desire to take the matter to trial. Thereafter, new counsel along with another member of his law firm assured Harris that the AUSA and the probation office agreed that his prior convictions did not qualify for ACCA purposes and again confirmed the 58 month plea deal.

Harris maintains that on the date of the plea hearing counsel told him that "everything would be alright" and to just go along with the Court's plea colloquy and he would be sentenced to 58 months. He alleges that sometime after the guilty plea, defense counsel told him that "the prosecutor lied" regarding the ACCA status and the expected sentence of 58 months. Counsel stated he was filing a motion in objection. Harris terminated counsel and retained another attorney prior to sentencing.

## II. LEGAL STANDARDS

### ***28 U.S.C. § 2255***

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on grounds that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Section 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To obtain relief under § 2255, the petitioner must establish a violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)). The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion, files, and records of the case conclusively show that the movant is not entitled to

relief." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (citing 28 U.S.C. § 2255(b)). The motion "can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. U.S.*, 68 F.3d 238, 240 (8th Cir. 1995).

***Ineffective Assistance of Counsel***

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove a claim of ineffective assistance of counsel, the petitioner must show that his counsel did not perform to the degree of skill of a reasonably competent attorney, and as a result, he was prejudiced. *Id.* at 687. Failure to satisfy either of the *Strickland* prongs [performance or prejudice] is fatal to the claim. *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("If the petitioner makes an insufficient showing on one component, the court need not address both components.").

"*Strickland*'s first prong sets a high bar." *Buck v. Davis*, 580 U.S. 100, 118 (2017). The Court "will not find an attorney's performance constitutionally deficient unless it is outside the "wide range of reasonable professional assistance." *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020) (citing *Strickland*, 466 U.S. at 689). "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment that *Strickland*'s first prong is satisfied." *Id.* (citing *Buck*, 580 U.S. at 118-119). The Court makes "every effort to eliminate the

"distorting effects of hindsight" and consider performance from counsel's perspective at the time." *Id.* (quoting *Strickland*, 466 U.S. at 689). The starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (internal citation omitted). A petitioner "bears the burden to overcome the strong presumption that counsel's performance was reasonable." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013).

A court need not determine whether a movant meets the performance prong of *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Strickland*, 466 U.S. at 697. "[T]he prejudice prong requires proof that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (internal citation and quotation marks omitted). This inquiry depends on the likelihood of success if the alleged error were corrected." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Generally, to establish prejudice where a defendant has entered a guilty plea, "the [m]ovant must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post-conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral

proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). Where the petitioner states on the record that he is satisfied with his lawyer, that no threats or promises had been made to induce him to plead guilty, and admits his guilt, he has a heavy burden to overcome those admissions and show that his plea was involuntary. *Nguyen*, 114 F.3d at 703.

**III. DISCUSSION**

Harris's claims are refuted by the record. The record clearly reflects that Harris was advised of the possible consequences of a guilty plea and the possible penalties including the ACCA enhancement. The possible penalties were set forth in the written plea agreement and were stated by the Court during the plea hearing. Under questioning from the Court at the plea hearing, Harris stated that he understood the range of punishment and that the sentence to be imposed was within the Court's discretion. The Court told Harris that the sentencing guidelines would be calculated by the probation office. It is also clear in the plea agreement that there would be a Presentence Report prepared by the probation office There is no factual or legal basis to support Harris's claim.

Harris has not established any factual or legal basis to find his plea was involuntary. Further, Harris is not entitled to a hearing on the instant motion because his allegations are contradicted by the record, inherently incredible, and consists of speculation and conclusions.

## IV. MOTION TO SUPPLEMENT

Harris filed a motion to supplement [Doc. 11] the instant § 2255 motion to assert a claim based on the Supreme Court's decision in *Erlinger v. United States*, 602 U.S. 821 (2024). The motion will be denied as futile. *Erlinger* provides no relief to Harris because it was decided on June 21, 2024, well after he was sentenced on March 3, 2022. The Supreme Court did not make *Erlinger's* holding retroactively applicable to cases on collateral review. "For any case that is already final, the *Teague* rule will presumably bar the defendant from raising today's new rule in collateral proceedings." *Erlinger*, 602 U.S. 821, 859 (2024) (Kavanaugh dissenting) (citing *Edwards v. Vannoy*, 593 U.S. 255, 258 (2021); *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion); *see also Shores v. United States*, 4:14-cv-1019-MTS, 2026 WL 279283, at *1 (E.D. Mo. Feb. 3, 2026) (stating *Erlinger* is not retroactively applicable); *Jackson v. United States*, 1:24-cv-00132-SNLJ, 2024 WL 4466740, at *n. 5 (E.D. Mo. Oct. 10, 2024) (noting that *Erlinger* did not make its holding retroactively applicable to cases on collateral review).[3]

[3] Other district courts that have found *Erlinger* does not apply retroactively to cases on collateral review include the following: *United States v. Livingston*, 4:19-CR-00403 KGB, 2025 WL 2522952, at *6 (E.D. Ark. Sept. 2, 2025); *United States v. Watkins*, 1:21-CR-010, 2025 WL 786579 (D.N.D. Mar. 12, 2025); *State v. Deputy*, CR 0609012387A, 2026 WL 1883839, at *21 (Del. Super. Ct. June 29, 2026); *United States v. Charles*, 2025 WL 3687935, at *2 (D. Mass. Dec. 19, 2025); *United States v. Knutson*, CR 17-00157 (MJD), 2025 WL 1125474 (D. Minn. Apr. 16, 2025); *Ursery v. United States*, 3:22-CV-00776, 2024 WL 4652209, at *4 (M.D. Tenn. Nov. 1, 2024); *Moore v. United States*, 8:17-CR-354-CEH-CPT, 2025 WL 3214360, at *3–4 (M.D. Fla. Nov. 18, 2025); *Jackson v. United States*, 1:25-cv-1021, 2025 WL 2771525, at *4 (W.D. Mich. Sept. 26, 2025); *United States v. Pettis*, 1:15-CR-0233, 2025 WL 2194410, at *2 (D. Minn. Aug. 1, 2025); *United States v. Hansford*, 3:20-cr-57 DRL, 2025 WL 90240, at *3 (N.D. Ind. Jan. 14, 2025); *United States v. Abney*, CR 5:18-133-DCR, 2024 WL 5055827, at *3 (E.D. Ky. Dec. 10, 2024).

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc.1] is **DENIED** without a hearing and this matter is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the Motion to Supplement [Doc. 11] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability as to any of the claims raised in the § 2255 motion because petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

**SO ORDERED** on this 24th day of November, 2026.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE